1    **KAYE, ROSE & PARTNERS, LLP**
      Frank C. Brucculeri, Esq. (137199)
2    Daniel F. Berberich, Esq. (215946)
      9100 Wilshire Blvd., Suite 420W
3    Beverly Hills, California  90212
      Telephone: (310) 551-6555
4    Facsimile: (310) 277-1220
      E-mail:  brose@kayerose.com
5             fbrucculeri@kayerose.com
              dberberich@kayerose.com
6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10    ARABIAN GAS AND OIL

11    DEVELOPMENT COMPANY, a Bahrain
      Corporation,
12

13            Plaintiff,

14            v.

15    WISDOM MARINES LINES, S.A, a
      Panama Corporation, WISDOM
16    MARINES LINES CO., LTD., a Cayman
      Islands Corporation, and SAO WISDOM,
17    S.A., a Panama corporation,

18           Defendants.

Case No.

**VERIFIED COMPLAINT**

19

20        Plaintiff ARABIAN GAS AND OIL DEVELOPMENT COMPANY by its attorneys files

21    this Complaint against the Defendants WISDOM MARINE LINES, S.A., WISDOM MARINE

22    LINES, CO. LTD. and SAO WISDOM, S.A. as follows:

23        This is an action brought by Plaintiff under the Convention on the Recognition and

24    Enforcement of Foreign Arbitral Awards to enforce a foreign arbitration award that Plaintiff

25    expects to recover against the Defendants in recently commenced arbitration in London.

26

27

28

                         1

## JURISDICTION, VENUE, AND PARTIES

1.      This Court has subject matter jurisdiction of this action pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards 9 U.S. Code §§ 201-208, *et. seq*. (hereinafter the "New York Convention").  Under 9 U.S. Code § 203, this action is deemed to arise under the laws and treaties of the United States, and therefore the Court's jurisdiction is founded on 28 U.S.C. § 1331, *et. seq*.

2.      Venue is proper in this District under 9 U.S. Code § 204, *et. seq*.

3.      Plaintiff ARABIAN GAS & OIL DEVELOPMENT COMPANY (hereinafter "Plaintiff" or "AGODCO") is a corporation organized and existing under and by virtue of the laws of the Kingdom of Bahrain, with a principal place of business located in Bahrain.

4.      Defendant WISDOM MARINE LINES, S.A. is a corporation organized and existing under and by virtue of the laws of the Republic of Panama, with its registered office address as follows:  Wisdom Marine Lines S.A., (Panama), MMG Tower, 16th F, 53rd E. Street, Urbanización Marbella, Panama City, Panama.

5.      Defendant WISDOM MARINE LINES CO., LTD. is a corporation organized and existing under and by virtue of the laws of the Cayman Islands, with its registered office address as follows: Clifton House, 75 Fort Street, PO Box 1350, Grand Cayman KY1-1108, Cayman Islands.

6.      Defendant SAO WISDOM, S.A. is a corporation organized and existing under and by virtue of the laws of the Republic of Panama, with its business office address as follows: Care of Wisdom Marine Lines SA, Room 711, 7th Floor, 237, Fuxing S Road, Section 2, Da-an District, Taipei City, 10666, China, Republic of (Taiwan).

7.      The Court has limited quasi *in rem* jurisdiction over the defendants by virtue of the presence in the district of the asset in the ownership of the defendants, to wit: the MOTOR VESSEL GLOBAL FAITH, bearing IMO #9554169 and International Call Sign: 3FCU2, a vessel in the registered ownership of SAO WISDOM S.A., which is, in turn, a 100 percent owned by WISDOM MARINES LINES, S.A.

## THE UNDERLYING CLAIM ON THE MERITS

8.     Under a Memorandum of Agreement dated 29 November 2013, and on an amended "Norwegian Saleform 1993" (hereinafter referred to as "the MOA"), WISDOM MARINE LINES, S.A., or its guaranteed nominee agreed to sell, and AGODCO or its nominee agreed to buy, a vessel that was to be constructed on behalf of WISDOM MARINE LINES, S.A. at the Namura Shipbuilding Co Ltd. shipyard in Japan. The vessel was designated Hull No. 387. A copy of the MOA is hereto attached as **EXHIBIT 1**.

9.     WISDOM MARINES LINES CO., LTD. signed the MOA as WISDOM MARINE LINES, S.A.'s performance guarantor.

10.     WISDOM MARINES LINES, S.A. and Namura Shipbuilding Co. Ltd. had entered into a Shipbuilding Contract for the aforementioned Hull No. 387 on July 26, 2013. The MOA incorporated by reference said shipbuilding contract. A copy of the Shipbuilding Contract is hereto attached as **EXHIBIT 2**.

11.     The MOA did not contemplate a novation, but rather a resale of a vessel to be constructed on behalf of WISDOM MARINE LINES, S.A.

12.      The MOA bound WISDOM MARINE LINES, S.A. to ensure that the vessel was constructed by Namura Shipbuilding Co. in accordance with the Shipbuilding Contract and Classification Society requirements, as if WISDOM MARINE LINES, S.A. was to employ said vessel in trading. *See* EXHIBIT 1, MOA Cl. 11; *See* EXHIBIT 2 Shipbuilding Contract, Article 1, ¶ 3.

13.     Classification societies ensure vessels meet internationally acceptable ship construction standards. According to the Shipbuilding Contract, the classification society providing the standards for the construction of the vessel was Nippon Kaiji Kyokai ("NKK"). According to NKK's website, Nippon Kaiji Kyokai carries out classification surveys, and is actively engaged in a range of ship related activities and services aimed at contributing to promoting the protection of human life and property at sea, as well as protection of the marine environment.  *See* http://www.classnk.or.jp/hp/en/about/aboutNK/index.html.

14.     The building process requires close oversight and supervision for quality in the construction by the seller WISDOM MARINE LINES, S.A., who was contractually bound to regularly update the buyer AGODCO of "any requirement or opportunity to make any decision in respect of changes to the Vessel…"  EXHIBIT 1, MOA at lines 241-250.

15.     In fulfilling its end of the MOA agreement, AGODCO deposited 20% of the sales price (USD 5,250,000) as down payment with WISDOM MARINE LINES, S.A.'s bank account, as provided under Clause 2 of the MOA.  *Id*., at Cl 2.

16.     WISDOM MARINE LINES, S.A. breached its undertakings as seller under the MOA, with conduct which included, but is not limited to, the following acts/omissions set forth below:

17.     WISDOM MARINE LINES, S.A. failed to adequately and diligently supervise the construction of the vessel and update AGODCO, and in breach of the MOA failed to communicate to AGODCO any requirements or opportunities to make decisions in respect of changes to the Vessel as numerous of these arose, in accordance with Clause 18 of the MOA. *Id*., at Cl 18.

18.     WISDOM MARINE LINES, S.A. failed to attend inspections of machinery testing that the sellers should have attended, and never advised AGODCO, as it should have, of these inspections, in breach of clauses 15 and 18 of the MOA, which required the seller to exercise supervision of the construction in accordance with the terms of the Shipbuilding Contract.

19.     Due to WISDOM MARINE LINES, S.A.'s failure to exercise oversight and supervision over the construction of the vessel, the vessel was allowed to be defectively constructed, thereby incorporating several errors in its construction, some of which have been defectively repaired.

20.     WISDOM MARINE LINES, S.A. failed to disclose documents to AGODCO evidencing the results of inspections, tests, and trials, all of which are essential in determining whether the vessel has been constructed in accordance with the Ship Building Contract specifications and classification society standards. *See* EXHIBIT 1 and 2.

21.     AGODCO duly, and repeatedly, demanded of  WISDOM MARINE LINES, S.A.

1   to provide the documentation and information that would bear out whether the vessel had been
2   constructed in accordance with the MOA, the shipbuilding contract requirements, the class
3   requirements, and to provide access to the vessel for inspection so that these matters might be
4   ascertained by AGODCO as buyer. WISDOM MARINE LINES, S.A. refused to meet these
5   requests, and instead demanded that AGODCO take delivery of the vessel "as is", and pay the
6   balance of the purchase price.

7        22.    The MOA provides, in relevant part, with regard to resolution of disputes as
8   follows:

9        16  Arbitration

10        a)  This Agreement shall be governed by and construed in accordance with English
11        law and any dispute arising out of this Agreement shall be referred to arbitration in
12        London in accordance with the Arbitration Acts 1950 and 1979 or any statutory
13        modification or re-enactment thereof for the time being in force, one arbitrator being
14        appointed by each party.  On the receipt by one party of the nomination in writing of the
15        other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing
16        which the decision of the single arbitrator appointed shall apply.   If two arbitrators
17        properly appointed shall not agree they shall appoint an umpire whose decision shall be
18        final. If any dispute should arise in connection with the interpretation and fulfillment of
19        this agreement, London arbitration and English law to apply as per NSF 2012, clause 16
20        a). disputes of less than USD 50,000 (fifty thousand) to be settled in accordance with
21        LMAA small claims procedure."

22   EXHIBIT 1, MOA at lines 262 – 270.

23        23.    Both parties have filed claims in London arbitration. In the proceedings before the
24   English arbitration tribunal, WISDOM MARINE LINES, S.A. has filed a claim with which it
25   seeks to require AGODCO to take delivery of the vessel, and pay the balance of the purchase
26   price, together with the cost of lubricants that  WISDOM MARINE LINES, S.A. claims it paid
27   before commencement of sea trials. A copy of the Arbitration Claim is hereto attached as
28   **EXHIBIT 3**.

24.     In its Defense and Counterclaim filed before the London arbitration tribunal, AGODCO seeks: (A) a declaration that the MOA has become unenforceable by reason of WISDOM MARINE LINES, S.A.'s failure to reach timely agreement on the delivery conditions of the MOA, after payment of the buyer's down payment in accordance with clause 8;  (B)  a declaration that the MOA has become unenforceable by reason of Wisdom's failure to adequately supervise and document the construction of the vessel in conformity with the requirements of the MOA that have made it impossible to arrange:  (i) registration of the vessel; (ii) financing  of the vessel;  (iii) fixing the vessel to potential chartered employment; (C) damages in the form of a refund of the 20% of the sales price (USD 5,250,000), and such other additional damages remaining to be ascertained as a result of WISDOM MARINE LINES, S.A.'s failure to properly and timely deliver the vessel to AGODCO, leading to losses of revenue and market position. (D) costs of the arbitration. A copy of the AGODCO's Defense and Counterclaim is hereto attached as **EXHIBIT 4**.

### THE CORPORATE STRUCTURE AND INTERRELATIONSHIPS OF DEFENDANTS

25.     WISDOM MARINES LINES CO., LTD. is the owner of a fleet consisting of approximately 111 cargo vessels. WISDOM MARINES LINES CO., LTD.'s primary business is the acquisition, ownership, management and operation of its fleet.

26.     WISDOM MARINES LINES CO., LTD. owns and operates its fleet of vessels by and through its wholly owned subsidiary, WISDOM MARINE LINES, S.A. In turn, WISDOM MARINE LINES, S.A. is the 100% owner of the 111 vessels, each one of which  WISDOM MARINE LINES, S.A. owns through a one-ship special-purpose-corporation incorporated in Panama. A diagrammatic representation of these ownership structures, excerpted from the Website of the Defendants, is attached to this Complaint as **EXHIBIT 5**. A list of the vessels owned by Defendants under the aforementioned structure, as extracted from the Defendants' Website, is attached to this Complaint as **EXHIBIT 6**. A list of the respective one-ship-companies together with the respective ship each one of them owns, as extracted from the publicly available Offering Memorandum, dated November 4, 2013 (Prospectus for convertible

bonds), is attached hereto as **EXHIBIT 7**, at pp. 66 - 69.

27.     Even though Defendants are separately incorporated business entities in various offshore jurisdictions, they are an integrated single business enterprise, and such is evidenced by the following facts: (A) WISDOM MARINES LINES CO., LTD. provides all of the funds to its 100% holding subsidiaries for purchasing newbuilding vessels.  WISDOM MARINE LINES, S.A. exercises full control over its SPVs' operating, financing, and any other material matters; (B) WISDOM MARINE LINES, S.A. finances the SPV's that hold its respective vessels with substantial non-collateralized loans; (C) the approximate amounts of the loans WISDOM MARINE LINES, S.A. has extended to its subsidiary SPV's to date are USD 1,129,376,000; (D) WISDOM MARINE LINES CO., LTD. in turn injects substantial amounts of capital into WISDOM MARINE LINES, S.A. for the purpose of enabling it to acquire new vessels, with the source of the funds being securities issued by WISDOM MARINES LINES CO., LTD. As evidence of the foregoing, Defendant's Announcement on Behalf of Wisdom Marine Lines S.A. for Intercompany Loan is attached hereto as **EXHIBIT 8**; (E) the corporate owner of the M/V GLOBAL FAITH, SAO WISDOM, S.A., functions as an instrumentality of the Wisdom Group, performing all of its revenue earning work for the benefit of WISDOM MARINE LINES CO., LTD., to which the income is attributed and accounted for in consolidated financial statements: A copy of  the WISDOM MARINES LINES CO., LIMITED and its Subsidiaries Consolidated Financial Statements, dated 31 December 2015 and 2014, is attached hereto as **EXHIBIT 9** (*See* pp. 19); (F) WISDOM MARINE LINES CO., LTD. holds out shipping assets owned by its subsidiary companies as its own assets, which are held through individual subsidiary corporate-conduit entities, as it is plainly stated in its Offering Memorandum dated November 4, 2013. *See* EXHIBIT 7, at pp. 66 - 70; (G) Defendant WISDOM MARINE LINES CO., LTD., in its own Offering Memorandum dated November 4, 2013, affirmatively asserts its ownership, management, and operation over the fleet of vessels which, includes the M/V GLOBAL FAITH, making it plain that there is a unity of interest and ownership over the assets that makes the respective corporate separateness indistinguishable. *Id*., at pp. 62, 70

28.     SAO WISDOM, S.A., the registered owner of the MOTOR VESSEL GLOBAL

FAITH with IMO #: 9554169 and International Call Sign: 3FCU2, is a subsidiary of WISDOM MARINE LINES, S.A. *See* EXHIBIT 9, at pp. 22.   Indeed, the M/V GLOBAL FAITH is expressly held out by Defendants to be part of the "Wisdom fleet".  A copy of Defendants' public announcement regarding the M/V Global Faith is attached hereto as **EXHIBIT 10**.

29.     The M/V GLOBAL FAITH, by engaging in worldwide trade, carries out the main business purpose of all of the corporations here involved, *i.e.* SAO WISDOM, S.A., WISDOM MARINE LINES, S.A. and WISDOM MARINE LINES, CO. LTD. *See* EXHIBIT 7, at pp. 62, 70.

## RISK OF IRREPARABLE HARM

30.     Defendants operate their business from their base in Taiwan, where WISDOM MARINES LINES CO., LTD. is listed in the Taiwan Stock Exchange as a foreign company. However, the Defendants' tangible assets, *i.e.* seagoing vessels, are mobile and transient, and in the event Plaintiff recovers an arbitration award, it will be extremely difficult, if not impossible, to obtain satisfaction of same, by execution of the judgment, to which the award may be converted. To Plaintiff's knowledge, Defendants do not have assets in their respective countries of incorporation, *i.e.* Panama or the Cayman Islands, respectively, which may be subjected to creditor's remedies for satisfaction of the anticipated arbitral award.

31.     Adding to the difficulty of obtaining satisfaction of an anticipated arbitration award, Taiwan, where the Defendants have the base of their corporate management, is not a signatory to the New York Convention. Because of this, enforcing a London arbitration award will require cumbersome proceedings with a doubtful outcome.

32.     As a consequence of the foregoing, Plaintiff runs a substantial risk that the arbitration award it expects to recover, which Plaintiff estimates is likely to be in excess of its 20% down payment of USD 5,250,000.00, will remain unsatisfied, and will be for all practical purposes and effects unenforceable.

33.     The Defendants, nevertheless, have tangible property within the State of California, and specifically within the Judicial District of this Court, to wit: the M/V GLOBAL FAITH, with IMO #: 9554169, and International Call Sign: 3FCU2, registered in the Republic of

1   Panama, which is now present within the district conducting cargo handling operations and may

2   be attached by process of  pre-judgment attachment and garnishment, pursuant to Rule 64 of  the

3   Federal Rules of Civil procedure and California Code of Civil Procedure section 485.210(a) *et.*

4   *seq.*

5          34.    This Court is vested with jurisdiction to order and maintain an attachment over

6   property of the Defendants, *i.e.* the GLOBAL FAITH, pending resolution of the merits of the

7   controversy in the London arbitration proceedings where AGODCO, WISDOM MARINE

8   LINES, S.A. and WISDOM MARINES LINES CO., LTD. have submitted their disputes for

9   resolution on the merits.

10         35.    Plaintiff will show in its application concurrently filed with this Complaint that the

11  presence of the vessel within the state is not merely fortuitous, and that this forum is not an

12  inconvenient arena for Defendant to litigate the limited issues arising hereunder. An attachment in

13  aid of the pending arbitration in another forum would be constitutionally permissible, as the

14  Defendants have purposely arranged for their vessels to call at ports of the State of California.

15         36.    In consequence of the foregoing, Plaintiff prays for the Court to exercise its

16  Jurisdiction over this matter; review Plaintiff's application for the issuance of an order for a

17  prejudgment writ of attachment of the M/V GLOBAL FAITH as prejudgment security under Rule

18  64 of the Federal Rules of Civil Procedure, and under California Code of Civil Procedure section

19  485.210(a), *et seq.*, as Plaintiff's claim is at great risk of becoming uncollectible once the arbitral

20  tribunal in London issues its award.

21         WHEREFORE Plaintiff Arabian Gas and Oil Development Company prays that its

22  Verified Complaint be accepted; that the Court consider *ex parte*, and grant, the application of

23  Plaintiff for a right to attach order and pre-judgment writ of attachment, which is being filed

24  concurrently with this complaint in aid of arbitration pending in London; and for such other and

25  further relief as the Court in its discretion deems just, equitable, and proper.

26

27

28

1    Dated: July 7, 2016                    **KAYE, ROSE & PARTNERS, LLP**

2
                                           By:   /s/ *Frank C. Brucculeri*
3                                              Frank C. Brucculeri
                                               Daniel Berberich
4                                              Attorneys for Plaintiff
                                               *ARABIAN GAS AND OIL DEVELOPMENT*
5                                              *COMPANY*

6

7    Of Counsel:
     George A. Gaitas
8    *Pro hav vice application forthcoming*
     **CHALOS & CO, P.C.**
9    7210 Tickner Street
     Houston, Texas 77055
10   Telephone:     (713) 574-9582
     Facismile:     (866) 702-4577
11   E-mail:        georgegaitas@chaloslaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28