UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARABIAN GAS AND OIL DEVELOPMENT COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WISDOM MARINES LINES, S.A., et al.,<br><br>Defendants. | Case No. 16-cv-03801-DMR<br><br>**ORDER RE: SPECIALLY APPEARING DEFENDANTS' MOTION TO INCREASE UNDERTAKING**<br><br>Re: Dkt. No. 57 |

Specially Appearing Defendants Wisdom Marine Lines, S.A. and Wisdom Marine Lines Co. ("Defendants") move for an order to increase the undertaking posted by Plaintiff Arabian Gas and Oil Development Company ("Plaintiff") by an additional $186,804.05. [Docket No. 57]. Plaintiff opposes. [Docket No. 59]. Having considered the parties' papers and oral argument, Defendants' motion to increase the undertaking is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall post an additional undertaking in the amount of $171,804.05 within 14 days of this order.

## I.   FACTS & PROCEDURAL HISTORY

The dispute underlying this attachment action relates to a ship that Defendant Wisdom Marine Lines, S.A. ("Wisdom S.A.") sold to Plaintiff. Plaintiff alleges that the ship is defective. The parties initiated arbitration proceedings in London. Compl. at ¶¶ 22-24 [Docket No. 1]. In the arbitration, Wisdom S.A. requests that Plaintiff be ordered to pay the balance of the purchase price for the ship, and that Plaintiff take possession of the ship. Compl. at ¶ 23; Defendant's Claim Submission [Ex. 3 to Compl.]. Plaintiff filed a counterclaim, seeking a declaration that the Memorandum of Agreement regarding the sale of the ship is unenforceable. Compl. at ¶ 24; Plaintiff's Defense and Counterclaim [Ex. 4 to Compl.].

On July 7, 2016, Plaintiff filed a verified complaint and an *ex parte* application for a writ

of attachment to attach a ship owned by Wisdom S.A. as security for the London arbitration proceedings. That vessel is named the Global Faith, IMO Number 9554169 ("Global Faith"), and was located within the court's jurisdiction at the time Plaintiff filed its application for the writ of attachment. *See Ex Parte* Application for Writ of Attachment [Docket No. 3]. The court granted Plaintiff's *ex parte* application. *See* 7/8/16 Order [Docket No. 14]. Plaintiff thereafter posted the statutory undertaking of $10,000.00. *See* Special Bond [Docket No. 17]; *see also* Cal. Code Civ. Pro. § 498.220(a) ("the amount of an undertaking filed pursuant to this article shall be ten thousand dollars ("$10,000)"). The court issued a writ of attachment and the Global Faith was arrested pursuant to the writ on July 11, 2016 and transferred to a substitute custodian. *See* Writ of Attachment [Docket No. 19]; Declaration of Arrest [Docket No. 20].

On July 20, 2016, Defendants moved to dismiss Plaintiff's verified complaint and, in the alternative, to set aside the writ of attachment and to release the Global Faith. *See* Defs' Mot. to Dismiss [Docket No. 28]. Defendants also moved, in the alternative, to increase the amount of Plaintiff's undertaking to $315,000.00. *See* Defs' Mot. to Dismiss at 17-18; Notice of Objection to Bond Amount [Docket No. 35]. The court thereafter ordered the parties to submit supplemental briefing on issues related to the then-pending motion to dismiss. 8/1/16 Order Requesting Supplemental Briefing [Docket No. 47]; Plaintiff's Supplemental Briefing [Docket No. 50]; Defendants' Supplemental Briefing [Docket No. 51].

On August 4, 2016, the court held a hearing at which it set aside the attachment order, quashed the writ of attachment, and ordered the immediate release of the Global Faith. 8/4/16 Order setting aside the Right to Attach Order, quashing the Writ of Attachment, and releasing the vessel from attachment [Docket No. 52]; 8/14/16 Minute Order [Docket No. 53]. The court denied Defendants' request to increase the undertaking, but instructed Defendants that they could file a separate motion to increase the undertaking to cover any losses they were likely to incur if the Global Faith's attachment was ultimately deemed wrongful. 8/4/16 Hearing Trans. at 34:20-35:24 [Docket No. 56].

On September 29, 2016, Defendants filed the instant motion to increase Plaintiff's undertaking by $186,804.05, which represents the attorneys' fees and costs Defendants incurred in

defeating Plaintiff's writ of attachment of the Global Faith.  *See* Defs' Mot. to Increase Undertaking [Docket No. 57].  Plaintiff opposes.  *See* Opp'n to Mot. to Increase Undertaking [Docket No. 59].

## II.     DISCUSSION

### A. Probable Recovery for Wrongful Attachment

Defendants move to increase Plaintiff's undertaking by $186,804.05 pursuant to Cal. Civ. Pro. Code § 490.020(a).  They argue that such an increase is appropriate because that amount represents their "probable recovery" for wrongful attachment of the Global Faith, consisting of the attorneys' fees and expenses they incurred in defeating the attachment.  Plaintiff proffers a myriad of arguments[1] against increasing the undertaking which are discussed below, but at the hearing, Plaintiff stressed that the main reason Defendants' motion should be denied is because Defendants cannot establish that they are more likely to prevail in the London arbitration proceedings than Plaintiff, and therefore cannot show that their recovery for wrongful attachment is "probable."

Since the key arguments turn on the interpretation of California's attachment statutes, the court begins with the overall framework and language of California's attachment statutes.

### 1.     California Attachment Statutes

In attachment proceedings, federal courts apply the "law of the state where the court is located."  *See* Fed. R. Civ. P. 64.  California law requires courts to strictly construe the attachment statutes.  *See Jordan-Lyon Prods., Ltd. v. Cineplex Odeon Corp.*, 29 Cal. App. 4th 1459, 1466 (1994) ("'[The court's] starting point is the rule that the Attachment Law statutes (Code Civ. Proc., § 481.010 *et seq.*) are subject to strict construction because they are purely the creation of the Legislature.'") (quoting *Vershbow v. Reiner*, 231 Cal. App. 3d 879, 882 (1991)); *Rose v. Abraham*, No. CIV F 08-606 AWI SMS, 2008 WL 2127996, at *1 (E.D. Cal. May 20, 2008) (collecting California cases regarding the same).

---

[1] At the August 4, 2016 hearing, the court held that it had subject matter jurisdiction over this action under Section 202 of the Federal Arbitration Act.  *See* 8/4/16 Hearing Trans. [Docket No. 56] at 26:19-27:20.  In its opposition, Plaintiff argues that this court lacks jurisdiction because the court vacated the writ of attachment and the Global Faith is no longer within the court's territorial waters.  However, at the hearing on the instant motion, Plaintiff conceded that the court already ruled on the existence of subject matter jurisdiction, and withdrew its jurisdictional argument.

3

Accordingly, an attachment is wrongful only under the circumstances specified in California Code of Civil Procedure Section 490.010(b). One such circumstance occurs where an attachment is levied "in an action where the plaintiff does not recover judgment." Cal. Civ. Pro. Code § 490.010(b); *see*, *e.g.*, *Universal Trading & Inv. Co. v. Kiritchenko*, No. C–99–3073 MMC, 2010 WL 4010232, at *3 (N.D. Cal. Oct. 13, 2010) (plaintiff's attachment was wrongful because defendant prevailed on summary judgment).

"Where a plaintiff causes a wrongful attachment," a defendant may recover " '(1) [a]ll damages proximately caused to the defendant by the wrongful attachment"; and "(2) [a]ll costs and expenses, including attorney's fees, reasonably expended in defeating the attachment.'" *Universal Trading & Inv. Co*., 2010 WL 4010232, at *2 (quoting Cal. Civ. Pro. Code § 490.020(a)). However, the defendant's recovery for wrongful attachment is limited to the amount of the undertaking posted by Plaintiff. *See* Cal. Civ. P. § 490.020(b).

A defendant may move to increase the amount of an undertaking pursuant to California Code of Civil Procedure Section 489.220(b). Under section 489.220(b), a court must first determine whether the defendant's probable recovery for wrongful attachment exceeds the amount of the posted undertaking. Cal. Civ. Proc. Code § 489.220(b). If so, then the court "shall order the amount of the undertaking increased to the amount [the court] determines to be the probable recovery for wrongful attachment if [the attachment] is ultimately determined that the attachment was wrongful." *Id*.

### 2. Analysis

The parties agree that Plaintiff's attachment of the Global Faith will be considered wrongful only if Plaintiff does not recover judgment in the London arbitration proceedings. *See* Cal. Civ. Pro. Code § 490.010(b). If the attachment ultimately is deemed wrongful, Defendants will be entitled to seek all damages proximately caused by the wrongful attachment, including attorneys' fees reasonably expended in defeating the attachment. *See* Cal. Civ. Pro. Code § 490.020(a)).

The parties disagree on what Defendants must show to establish "probable recovery for wrongful attachment" in order to increase Plaintiff's undertaking pursuant to section 489.220(b).

Defendants contend that the phrase "probable recovery" focuses on a determination of the amount of money to which Defendants will likely be entitled if the attachment of the Global Faith is deemed wrongful. Plaintiff posits a different interpretation. Plaintiff claims that the phrase "probable recovery" refers to a merits-based inquiry that focuses on the likelihood that Defendants will prevail in the London arbitration proceedings. As such, Plaintiff argues that in order to support an increase in the undertaking, Defendants must show that they are likely to prevail, or that it is "probable" that they will prevail in the London arbitration proceedings.

The court turns, as it must, to the language of the statute. Section 489.220(b) states that "if, upon objection to the undertaking, the court determines that the probable recovery for wrongful attachment exceeds the amount of the undertaking, it shall order the amount of the undertaking increased to the amount it determines to be the probable recovery for wrongful attachment if it is ultimately determined that the attachment was wrongful." Cal. Civ. Proc. Code § 489.220(b). On the one hand, the statute could be interpreted as requiring a determination of the likely *amount* of the recovery for wrongful attachment, and whether it exceeds the *amount* of the posted undertaking. This interpretation is bolstered somewhat by the fact that the Legislature has used clear language in the text of the attachment statute when it has required a court to evaluate the merits of the underlying claim. For example, the Legislature has specified that a court must issue a writ of attachment when it makes four statutory findings, including that the "plaintiff has established *the probable validity* of the claim upon which the attachment is based." Cal. Civ. Pro. Code § 484.090 (emphasis added). No similar language exists in section 489.220(b).

On the other hand, the language of section 489.220(b) is not expressly limited to a purely monetary evaluation. Moreover, the text of the statute does not preclude a court from considering the merits of the underlying action in determining a defendant's "probable recovery for wrongful attachment." As such, the court finds that the term "probable recovery" is ambiguous.

At least one court is in agreement with this conclusion. *See N. Hollywood Marble Co. v. Superior Court*, 157 Cal. App. 3d 683, 688 (1984) (explaining that "[t]here is ambiguity and uncertainty as to precisely what the Legislature intends a trial court to consider in determining 'probable recovery for wrongful attachment' under section 489.220(b)). In *N. Hollywood Marble*

5

*Co.*, which neither party cited, the California Court of Appeal held that the term "probable recovery" in section 489.220(b) should be construed as giving the trial court discretion to consider the probability of a plaintiff prevailing in the underlying action in determining a defendant's "probable recover for wrongful attachment" under section 489.220(b) and, accordingly, denied the defendant's motion to increase the plaintiff's undertaking because the defendant effectively conceded the merits of the plaintiff's claim. *Id*. at 688. *N. Hollywood Marble Co.* is well-reasoned and highly instructive, and the court finds it appropriate to discuss the opinion at length here.

In *N. Hollywood Marble Co.*, the plaintiff sued the defendant for breach of contract, obtained a right-to-attach order to seize inventory, equipment, and supplies of defendant's business equal to the amount of plaintiff's breach of contract claim, and posted the statutory undertaking. *Id*. at 686. The defendant moved to increase the plaintiff's undertaking pursuant to section 489.220(b). *Id*. The trial court denied the defendant's motion, finding that "section 489.220[b] contemplates the trial court's consideration of the probable validity of the plaintiff's claim in the process of determining the 'probable recovery' of defendant for 'wrongful attachment." *Id*. at 688.

On appeal, the defendant argued that the trial court was precluded from considering the "probable validity of the plaintiff's claim" in determining its "probable recovery for wrongful attachment" under section 489.220(b). *Id*. at 689, 691. Like Defendants here, the defendant in *N. Hollywood Marble Co.* advanced a reading of section 489.220(b) that was confined to a determination of a monetary amount. *Id*. at 689. As explained by the California Court of Appeal, under the defendant's posited reading of section 489.220, a court should simply assume the attachment is wrongful and increase the undertaking to the "total damages [or amount the] defendant competently demonstrates it is likely to sustain from the attachment." 157 Cal. App. 3d at 689. "This reading, in effect, equates 'probable recovery' with 'probable loss.'" *Id*.

The *N. Hollywood Marble Co.* court rejected the defendant's construction of section 489.220(b) as contrary to the purpose of the attachment remedy. *Id*. at 689-91. As stated by the court, the purpose of the attachment procedure is to protect an unsecured creditor plaintiff from the

6

dissipation of the defendant's assets before the plaintiff can obtain and enforce a judgment against the defendant, by allowing the plaintiff to attach certain assets in satisfaction of the plaintiff's claim. *Id.* at 690. This purpose would be frustrated by the defendant's proffered construction of 489.220, because a plaintiff would then be required to unnecessarily finance a "massive undertaking on a claim of certain merit." *Id*. at 690. Under the specific facts of *Hollywood Marble Co.*, the court concluded that enforcing a literal interpretation of section 489.220 would lead to an absurd result in the case before it, because the defendant had essentially conceded the merits of plaintiff's underlying claim. *Id*. at 691.

Instead, the court adopted a more expansive construction of the term "probable recovery." It construed the term as giving "the trial court discretion to consider . . . the probability that plaintiff will prevail on his claim in the action" in determining a defendant's probable recovery for wrongful attachment. *Id*. at 689, 691-62. The court concluded that the "ambiguous language of section 489.220, subdivision (b), does not reflect a clear legislative intent to divest trial courts of [their inherent discretion] and to preclude the consideration of facts that are critical to the purpose of attachment." *Id.* at 692.

Applying the principles in *N. Hollywood Marble Co.*, this court finds no evidence in the record to suggest that Plaintiff is more likely to prevail in the London arbitration proceedings than Defendants. The court set aside the writ of attachment because Plaintiffs submitted conclusory declarations in opposition to Defendants' motion to set aside the writ. Such declarations did not demonstrate the probable validity of Plaintiff's claim in the London arbitration proceedings. *See* 8/4/16 Hearing Trans. at 16:8-17:22; 18:7-19:6; 28:21-32:17. [Docket No. 56]. As such, the court finds that the amount of Plaintiff's undertaking should be increased to provide security to Defendants for a potential wrongful attachment claim in the event that Plaintiff does not recover judgment in the London proceedings.

### B. The Amount of the Increase in the Undertaking

The court now determines whether the requested increase in the amount of the undertaking is appropriate.

//

1. **Proof of the Amount of Undertaking**

Defendants move to increase the undertaking by an additional $186,804.05 to cover the attorneys' fees and costs they incurred in defeating the attachment, which breaks down as follows: $115,884.05 for Keesal, Young, & Logan (Defendants' U.S. counsel), $40,850.00 for Holman Fenwich Willan (English counsel), $13,300.00 for Amin Law Firm (Baharaini counsel), $1,000.00 for Jheding International Law Offices (Taiwanese counsel), $740.00 for Brookes Bell (Defendants' appointed surveyor firm), and $15,000.00 for fees and costs incurred in preparing the instant motion and the anticipated motion for damages for wrongful attachment. *See* Defs' Mot. to Dismiss at 6 [Docket No. 57]. Defendants submit the Declaration of James A. Marissen in support of nearly all of the requested fees and costs. *See* Marissen Decl. [Docket No. 57-1].

Plaintiff argues that Defendants' request should be denied because Defendants have failed to provide proof that they actually incurred the requested fees and expenses, for example, by submitting copies of bills. Plaintiff does not cite any authority in support of its argument. The court has found no case discussing the degree of proof necessary to show the amount of "probable recovery for wrongful attachment" under California law. *Reachi v. Nat'l Auto. Cas. Ins. Co. of Los Angeles*, 37 Cal. 2d 808, 813-14 (1951), cited by Defendants, appears to be the closest, although it addresses sufficiency of pleading, and is therefore not on point. In *Reachi*, the California Supreme Court held that in order to survive a demurrer in a wrongful attachment suit, a party need not prove that the requested attorneys' fees were actually incurred in defeating a writ of attachment in order to claim these fees as damages. Here, since Defendants move to increase the undertaking to cover their probable and not actual recovery for wrongful attachment, Defendants need not establish the amount of the undertaking to the degree required for a motion to recover actual damages from the wrongful attachment. The court finds that counsel's sworn declaration is sufficient for the purpose of supporting the amount of the requested increase.

The court will review each requested category of fees and costs to determine the appropriate increase for the amount of the undertaking.

2. **Attorneys' Fees and Costs**

The court finds that there is sufficient support for the work performed by Defendants' U.S.

counsel to increase the undertaking to include these fees and costs in the amount of $115,884.05. The Declaration of James A. Marissen attests that the Keesal firm spent over 370 hours researching issues and preparing motions related solely to Plaintiff's writ of attachment, which included gathering evidence from English, Baharaini, and Taiwanese counsel. *See* Marissen Decl. at ¶¶ 6-7. The record supports this description of the work performed, and shows that Defendants filed a (1) motion to dismiss Plaintiff's verified complaint and to set aside the writ of attachment, which included a number of exhibits and declarations including a declaration from Baharaini counsel, and (2) a supplemental brief which included an analysis of Taiwanese law. *See* Defs' Mot. to Dismiss [Docket No. 28]; Amin Decl. [Docket No. 28-9]; Defs' Supplemental Briefing at 6 [Docket No. 49].

With respect to the work performed by Defendants' English counsel ($40,850.00), the court also finds there is sufficient support for an increase in the undertaking to include these fees. Defendants contend that it was necessary to enlist English counsel because they were moving to set aside the attachment on the ground that Plaintiff failed to show that it was likely to prevail in the London arbitration proceedings. *See* Marissen Decl. at ¶ 11. This required research into the London arbitration proceedings, and obtaining declarations from English counsel on points of English law and the facts of the underlying dispute. *Id*. The record shows that Defendants moved to set aside the attachment on that ground, and submitted two declarations from English counsel in support of its motion. *See* Defs' Mot. to Dismiss at 13-16 [Docket No. 28]; Dunlop Decl. [Docket No. 28-7]; Dunlop Reply Decl. [Docket No. 44-6].

Regarding the work performed by Baharaini counsel ($13,300.00) and Taiwanese counsel ($1,000.00), the court similarly finds that there is sufficient support for an increase in the undertaking to include these fees. Defendants assert that they retained Baharaini counsel to research Baharaini law and Plaintiff's corporate status in connection with its motion to dismiss. *See* Marissen Decl. at ¶ 12. The record shows that Defendants moved to dismiss on the ground that Plaintiff lacked the capacity to sue under the law of Baharaini, and provided two declarations from Baharaini counsel. *See* Mot. to Dismiss at 8-10 [Docket No. 28]; Amin Decl. [Docket No. 28-9]; Amin Reply Decl. [Docket No. 45]. Defendants also state that they retained Taiwanese

9

counsel to respond to this court's request for supplemental briefing on whether the United Kingdom's arbitration decisions were enforceable in Taiwan. *See* Marissen Decl. at ¶ 13. The record shows that Defendants responded to the court's request for supplemental briefing of the enforceability of the United Kingdom's arbitration decisions in Taiwan. *See* Defs' Supplemental Briefing at 6 [Docket No. 49].

Regarding the fees for the Brookes Bell surveyor firm ($740.00), the court also finds it appropriate to increase the undertaking to include these fees. Defendants submitted a declaration from the Brookes Bell firm in support of its motion to dismiss in order to refute Plaintiff's claim that the vessel in the underlying dispute is defective. *See* Eijkelenboom Decl. (Docket No. 44-4); Marissen Decl. at ¶ 14.

With respect to the fees and costs incurred in connection with the instant motion as well as for the anticipated motion for actual damages for wrongful attachment ($15,000.00), unlike the other categories of fees and expenses, the court finds that Defendants have not explained how they fit into either category of damages allowable under section 490.020(a). Section 490.020(a) limits a defendant's damages for wrongful attachment to those damages either "proximately caused" by the wrongful attachment or those "reasonably expended" in defeating the attachment. *See* Cal. Civ. Pro. Code § 490.020(a). It is not clear that fees and costs connected with the preparation of undertaking-related motions are recoverable under Section 490.020(a). As the court must strictly construe the attachment statutes, and as Defendants did not provide any support for this portion of their request, the court declines to allow these fees and costs for the purpose of increasing Plaintiff's undertaking.

In sum, the court finds there is sufficient information to increase the undertaking by $171,804.05. The court underscores that it is not making a finding regarding the reasonableness of these fees. Rather, the court is making a preliminary determination of probable recovery, based on the record before it, as to the amount by which Plaintiff's undertaking should be increased pursuant to section 489.220(b).

### C. Miscellaneous Arguments

Plaintiff makes a number of miscellaneous arguments throughout its opposition. None of

these arguments are persuasive. Outside of its statutory argument which is discussed above, Plaintiff's other main contention is that the court should deny Defendants' motion as a procedural matter because the court denied Defendants' previous request to increase the undertaking. *See* Opp'n at 5. Plaintiff misconstrues the record. The court told Defendants that they could file a separate motion to increase the undertaking to cover any losses they were likely to incur if the vessel's attachment was deemed wrongful. Defendants have now done this. *See* 8/4/16 Hearing Trans. at 34:20-35:25 [Docket No. 56]; Defs' Mot. to Increase Undertaking [Docket No. 57]. In any event, a court is not precluded from considering a successive motion to increase an undertaking to account for new or additional damages. *See Tiffany Prods. of Cal. v. Superior Court*, 131 Cal. App. 729, 735-36 (Cal. Dist. Ct. App. 1933) (explaining that a court may consider a successive motion to increase undertaking based on new or additional damages suffered by a party).

Plaintiff next argues that Defendants' motion should be denied because Defendants did not suffer any actual damages, as the Global Faith's operations were not restricted during the period of attachment. *See* Opp'n at 4. As discussed above, California law does not restrict an increase in an undertaking to "actual damages;" it expressly permits Defendants to recover all fees and costs including attorneys' fees "reasonably expended" in defeating the attachment, as well as all damages proximately caused by the wrongful attachment. *See* Cal. Civ. Pro. Code § 490.020(a)).

Lastly, Plaintiff asserts that Defendants should not be permitted to seek relief before this court because they have alternative avenues to recover their attorneys' fees, namely the London arbitration proceedings and the Global Faith's ship insurance which purportedly covers legal costs and attorneys' fees. *See* Opp'n at 4, 6. This argument misses the point. Defendants are not moving for an award of actual damages for wrongful attachment at this point, nor could they, since the London arbitration proceedings are ongoing. Instead, Defendants are requesting that the court order Plaintiff to post a greater undertaking to cover the attorneys' fees and expenses incurred by Defendants in defeating the attachment proceedings, as security in the event that the attachment is ultimately deemed wrongful.

11

### III. CONCLUSION

In conclusion, the court grants in part and denies in part Defendants' motion to increase the undertaking. Plaintiff shall post an additional undertaking in the amount of $171,804.05 within 14 days of the issuance of this order.

**IT IS SO ORDERED.**

Dated: March 30, 2017



Donna M. Ryu
United States Magistrate Judge