1

2

3

4                         UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    ARABIAN GAS AND OIL                    Case No. 16-cv-03801-DMR
     DEVELOPMENT COMPANY,
8                                           **ORDER RE: CIVIL CONTEMPT
             Plaintiff,                     SANCTIONS**
9
         v.                                 Re: Dkt. No. 73
10
     WISDOM MARINES LINES, S.A., et al.,
11
             Defendants.
12

13          Specially Appearing Defendants Wisdom Marine Lines, S.A. and Wisdom Marine Lines

Co. (collectively, "Wisdom") request that the court hold Plaintiff Arabian Gas and Oil
14
Development Company ("AGODCO") in civil contempt for its failure to comply with the March
15
30, 2017 order to post an additional undertaking in the amount of $171,804.05.  Wisdom seeks
16
monetary sanctions of $31,017.26 as reimbursement for attorneys' fees and costs incurred in
17
seeking a contempt sanction.  [Docket Nos. 73, 94].  AGODCO opposes.  [Docket No. 89].  The
18
parties submitted supplemental briefing at the court's request.  [Docket Nos. 93, 94].  The court
19
held oral argument on August 10, 2017.
20
            Having considered the parties' briefing and oral argument, and for the reasons stated
21
below and on the record, Wisdom's request for civil contempt sanctions is **GRANTED**.  The court
22
finds that AGODCO is in civil contempt of its March 30, 2017 order.  AGODCO is subject to a
23
fine of $500.00 per day, beginning on the day following the date of this order, to be paid until
24
AGODCO complies with the March 30 order by posting the additional undertaking.  The court
25
awards Wisdom $20,091.82 for attorneys' fees and costs reasonably expended in seeking this
26
contempt sanction.
27
**I.      BACKGROUND**
28
            The facts and procedural history underlying this attachment action are set forth in detail in

United States District Court
Northern District of California

United States District Court
Northern District of California

1    prior orders.  *See Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, No. 16-CV-03801-

2    DMR, 2017 WL 1175592, at *1-2 (N.D. Cal. Mar. 30, 2017) [Docket No. 68]; *Arabian Gas & Oil*

3    *Dev. Co. v. Wisdom Marines Lines, S.A.*, No. 16-CV-03801-DMR, 2017 WL 2378060, at *1 (N.D.

4    Cal. June 1, 2017) [Docket No. 84].  The court will confine its discussion to the information

5    relevant to Wisdom's request for civil contempt sanctions.

6             On March 30, 2017, AGODCO was ordered to post an additional undertaking in the

7    amount of $171,804.05 within 14 days of the order, or by April 13, 2017 ("March 30 order").  *See*

8    *Arabian Gas & Oil Dev. Co.*, 2017 WL 1175592, at *8.

9             AGODCO did not post the additional undertaking by April 13, 2017.

10            On April 13, 2017, AGODCO filed a mandamus petition with the Ninth Circuit.  *See*

11    Petition for Writ of Mandamus in *In re: Arabian Gas & Oil Dev. Co.*, No. 17-71080 [Appellate

12    Docket No. 1].  It also filed an emergency motion with the Ninth Circuit to stay the March 30

13    order.  *See* Emergency Motion to Stay in *In re: Arabian Gas & Oil Dev. Co.*, No. 17-71080

14    [Appellate Docket No. 3].

15            On April 17, 2017, AGODCO moved this court to stay the March 30 order pending

16    resolution of its mandamus petition.  [Docket No. 70].  Wisdom opposed the stay and requested

17    civil contempt sanctions for AGODCO's failure to comply with the March 30 order.  [Docket No.

18    73].

19            On May 25, 2017, the court denied AGODCO's motion to stay.  *See Arabian Gas & Oil*

20    *Dev. Co.*, 2017 WL 2378060 [Docket No. 84].  Despite the fact that AGODCO "conceded that it

21    had violated the court's March 30, 2017 order," *see id.* at *5; 5/25/17 Tr. at 7:25-8:4 [Docket No.

22    87], AGODCO received one final opportunity to post the additional undertaking by June 1, 2017.

23    *See Arabian Gas & Oil Dev. Co.*, 2017 WL 2378060, at *5.  Accordingly, the court held

24    Wisdom's request for civil contempt sanctions in abeyance until the end of the day on June 1,

25    2017.  *Id.*

26            On May 31, 2017, AGODCO filed a motion for leave to file a motion for reconsideration

27    of the May 25 order.  [Docket No. 81].  In the alternative, AGODCO requested a brief stay due to

28    "the official observance of Ramadan in Plaintiff's home country of Bahrain" so that it could post

2

United States District Court
Northern District of California

1    the additional undertaking.  [Docket No. 81 at 2].

2          AGODCO did not post the additional undertaking by June 1, 2017.

3          On June 2, 2017, the court denied AGODCO's reconsideration motion and request for a

4    brief stay, but gave AGODCO two additional weeks to file a response to Wisdom's request for

5    civil contempt sanctions.  *See Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, No.

6    16-CV-03801-DMR, 2017 WL 2406720 (N.D. Cal. June 2, 2017) [Docket No. 86].  Regarding

7    AGODCO's request for a brief stay, the court explained that while it would normally entertain

8    such a request, this particular request was "both late and vague, and smack[ed] of foot-dragging."

9    *Id.* at *2.  AGODCO's request was "suspiciously short on specifics;" AGODCO provided no

10    details about the steps it had taken to procure the additional bond, nor did it explain how Ramadan

11    actually affected its ability to obtain it.  *Id.* at *3.

12          On June 13, 2017, the Ninth Circuit denied AGODCO's mandamus petition.  *See* 6/13/17

13    Order in *In re: Arabian Gas & Oil Dev. Co.*, No. 17-71080 [Appellate Docket No. 7]. The Ninth

14    Circuit explained that "Petitioner has not demonstrated that this case warrants the intervention of

15    this court by means of the extraordinary remedy of mandamus."  *Id.*  The Ninth Circuit denied

16    AGODCO's emergency stay motion as moot.  *Id.*

17          On June 16, 2017, AGODCO filed its opposition to Wisdom's request for civil contempt

18    sanctions.  [Docket No. 89].  In its opposition, AGODCO raised procedural and substantive

19    challenges, but did not argue that it was unable to pay the additional undertaking.  Wisdom filed a

20    reply on June 23, 2017.  [Docket No. 91].

21          On July 18, 2017, the court ordered Wisdom to submit invoices to support its request for

22    attorneys' fees and costs.  [Docket No. 92].  The court ordered AGODCO to provide "evidence of

23    its financial condition including, for 2016 and the first half of 2017, profit and loss statements and

24    a balance sheet showing assets and liabilities."  [Docket No. 92 at 1].

25          On July 28, 2017, in response to the July 18 order, AGODCO argued for the first time that

26    it should not be held in civil contempt because it is unable to pay the additional undertaking.

27    [Docket No. 93].  To support its claimed inability to pay, AGODCO submitted three

28    unauthenticated financial documents purporting to show the precarious financial health of a

1    company called Arabian Worldwide Ventures SPC ("Arabian Worldwide"). *See* Docket No. 93;

2    2016 Financial Statement (Ex. 1) [Docket No. 93-1]; Balance Sheet for January 1 through June 30,

3    2017 (Ex. 2) [Docket No. 93-2]; Trial Balance Sheet for January 1 through June 30, 2017 (Ex. 3)

4    [Docket No. 93-3]. According to AGODCO, Arabian Worldwide has been doing business under

5    the trade name AGODCO since April 2012. [Docket No. 93 at ¶ 2].

6         To date, AGODCO has not posted the additional undertaking.

7    **II.    DISCUSSION**

8         Wisdom requests civil contempt sanctions for AGODCO's failure to comply with the

9    March 30 order, including monetary sanctions of $31,017.26 in attorneys' fees and costs.

10        Before turning to the merits, the court addresses several procedural challenges raised by

11   AGODCO. First, AGODCO contends that Wisdom's motion should be denied because Wisdom

12   should have noticed it as a separate motion, rather than seeking contempt sanctions in its

13   opposition to AGODCO's motion to stay. While technically correct, this argument elevates form

14   over substance. AGODCO received two weeks to file a written opposition to the request for

15   contempt sanctions—the same amount of time it would have received under the local rules for a

16   regularly noticed motion. AGODCO also had the opportunity to present oral argument.

17        AGODCO also asserts that it cannot be held in contempt of the March 30 order to post an

18   additional undertaking because the court lacked jurisdiction to issue such an order. According to

19   AGODCO, the court lacked jurisdiction because California attachment statutes do not authorize a

20   court to increase an undertaking when the court has already quashed the writ of attachment and

21   released the property subject to the writ. This argument has already been rejected in a prior order.

22   *See, e.g.*, *Arabian Gas & Oil Dev. Co.*, 2017 WL 2378060, at *1, n.1 (explaining that the "court

23   retained jurisdiction over Defendants' motion to increase Plaintiff's undertaking as it was ancillary

24   or incident to the order vacating Plaintiff's writ, and, moreover, because Plaintiff's $10,000.00

25   undertaking was and is still posted with the court").

26        Finally, AGODCO asserts that it was not in contempt of the March 30 order because it was

27   in the process of seeking appellate review of a legal issue of first impression. This argument also

28   lacks merit. The fact that AGODCO filed a writ of mandamus with the Ninth Circuit regarding

United States District Court
Northern District of California

4

1   the March 30 order does not excuse its compliance with the order.  *See* Wright & Miller, 16A Fed.

2   Prac. & Proc. Juris. § 3954 (4th ed.) ("The taking of an appeal does not by itself suspend the

3   operation or execution of a district-court judgment or order during the pendency of the appeal.");

4   *Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 188 (9th Cir. 1977) ("Absent the grant

5   of a stay or injunction and the approval of a bond, the status quo of the litigation is not fixed and

6   the litigation is free to continue.") (citation and internal quotation marks omitted).

7         The court now turns to the merits of the request for civil contempt sanctions.

8         **A.**     **Legal Principles**

9         As recently explained by the Ninth Circuit in *Shell Offshore Inc. v. Greenpeace, Inc.*, 815

10  F.3d 623, 628 (9th Cir. 2016), the "court's contempt powers are broadly divided into two

11  categories: civil contempt and criminal contempt."  Since the "difference between criminal and

12  civil contempt is not always clear," *United States v. Rylander*, 714 F.2d 996, 1001 (9th Cir. 1983),

13  the Supreme Court instructed courts to look to the "character and purpose" of the sanction to

14  determine whether the contempt is civil or criminal.  *Gompers v. Buck's Stove & Range Co.*, 221

15  U.S. 418, 441 (1911).  Contempt is "criminal if [the sanction] is 'punitive' and for the purpose of

16  'vindicat[ing] the authority of the court.'"  *Lazar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th

17  Cir. 2005) (quoting *Gompers*, 211 U.S. at 441).  By contrast, "contempt is civil if [the sanction] is

18  'remedial' and 'for the benefit of the complainant.'"  *Lazar*, 399 F.3d at 1110 (quoting *Gompers*,

19  211 U.S. at 441).

20        "[C]ourts have inherent power to enforce compliance with their lawful orders through civil

21  contempt."  *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also* 28 U.S.C. § 636(e)(4)

22  ("In any case in which a United States magistrate judge presides with the consent of the parties . . .

23  the magistrate judge may exercise the civil contempt authority of the district court.").  "The

24  standard for finding a party in civil contempt is well settled: The moving party has the burden of

25  showing by clear and convincing evidence that the [non-moving party] violated a specific and

26  definite order of the court."  *FTC v. Affordable Media*, *LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999)

27  (internal quotation marks omitted); *see also In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002)

28  (same).  Generally, a violation is shown by the party's "failure to take all reasonable steps within

United States District Court
Northern District of California

1   the party's power to comply." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th

2   Cir. 2006) (citation and internal quotation marks omitted).  Willfulness is not an element of

3   contempt. *Id.*

4           If the moving party establishes a violation of a specific and definite court order, the burden

5   shifts to the non-moving party "to prove that it 'took all reasonable steps within [its] power to

6   insure compliance.'" *Logtale, Ltd. v. IKOR, Inc.*, No. 11-CV-05452-EDL, 2016 WL 7740750, at

7   *2 (N.D. Cal. July 22, 2016) (quoting *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1403 (9th Cir.

8   1997)).  "A person should not be held in contempt if his action appears to be based on a good faith

9   and reasonable interpretation of the court's order." *Reno Air Racing Ass'n.*, 452 F.3d at 1130

10   (internal quotation marks omitted).

11           **B.      Analysis**

12           To begin with, AGODCO contends that the sanctions sought by Wisdom are criminal

13   rather than civil in nature.  Presumably, AGODCO makes this assertion in an attempt to trigger the

14   significant due process protections that must be provided before a finding of criminal contempt

15   can be made.  *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–27

16   (1994) (in context of criminal contempt, due process procedural protections include the right to

17   notice of charges, assistance of counsel, ability to present a defense, and, in certain instances, the

18   right to a jury trial); *see also* Fed. R. Crim. P. 42 (procedures for criminal contempt include notice,

19   appointment of a prosecutor, and a jury trial).

20           AGODCO makes two attempts to paint the requested sanctions as criminal.  Both are

21   specious.  First, AGODCO points to Wisdom's single citation to 18 U.S.C. § 401, which is the

22   criminal contempt statute.  *See* Defs' Opp'n to Mot. to Stay at 7 [Docket No. 73].  Although

23   Wisdom's reasons for making a sole citation section 401 are unclear, the whole of Wisdom's

24   briefing makes it abundantly clear that it seeks civil rather than criminal contempt sanctions.

25   Specifically, Wisdom seeks reimbursement of the fees and costs it incurred as a result of

26   AGODCO's failure to comply with the March 30 order.  This is a classic civil contempt sanction.

27   *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947) (explaining that

28   compensatory civil contempt sanctions are intended to "compensate the complainant for losses

United States District Court
Northern District of California

1    sustained," are "payable to the complainant" and must "be based upon evidence of complainant's

2    actual loss"). Next, AGODCO argues that Wisdom's statement that AGODCO "should be held

3    responsible" betrays a punitive purpose. *See* Defs' Opp'n to Mot. to Stay at 9. This amounts to

4    word play. As Wisdom explains, AGODCO will be held responsible for its "cavalier treatment of

5    these proceedings" through the issuance of civil contempt sanctions. *Id.* at 8-9.

6           Turning to the merits of the request for civil contempt sanctions, Wisdom has met its initial

7    burden of establishing by clear and convincing evidence that AGODCO violated a specific and

8    definite court order. The March 30 order required AGODCO to post the additional undertaking by

9    April 13, 2017. The May 25 order granted AGODCO a final opportunity to comply by posting the

10   additional undertaking by June 1, 2017. To date, AGODCO has not posted the additional

11   undertaking. Indeed, Plaintiff concedes the violation. *See* 5/25/17 Tr. at 7:25-8:4; Pltf's Opp'n to

12   Mot. for Civil Contempt Sanctions [Docket No. 89] at 9 ("Plaintiff admittedly failed to comply

13   with the Court's Order to post an additional undertaking . . . [.]").

14          The burden now shifts to AGODCO to prove that it took all reasonable steps within its

15   power to insure compliance. Here, AGODCO argues for the first time that it is presently unable to

16   comply with the March 30 order because it cannot pay the additional undertaking. *See* Pltf's

17   Supp. Brief [Docket No. 93] ¶¶ 6-11.

18          A present inability to comply is a complete defense to civil contempt. *See United States v.*

19   *Rylander*, 460 U.S. 752, 757 (1983) ("Where compliance is impossible, neither the moving party

20   nor the court has any reason to proceed with the civil contempt action."); *United States v.*

21   *Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996) ("Ability to comply is the crucial inquiry, and a court

22   should weigh all the evidence properly before it determines whether or not there is actually a

23   present ability to obey.") (citations omitted). The "inability to comply" is a rigorous and

24   demanding standard. Under prevailing Ninth Circuit law, the contempnor must establish

25   "'categorically and in detail'" why he is presently unable to comply with the court's order. *FTC*,

26   179 F.3d at 1241 (quoting *N.L.R.B. v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th

27   Cir. 1973). If the contempnor's inability to comply is self-induced, it cannot avoid civil contempt.

28   *See United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980); *see also S.E.C. v. Goldfarb*, No. C

United States District Court
Northern District of California

1    11-00938 WHA, 2012 WL 2343668, at \*4 (N.D. Cal. June 20, 2012) (citing *Asay*).

2         The court is highly skeptical of AGODCO's "inability to pay" defense.  AGODCO never

3    raised an inability to pay until very recently.  It did so only in response to the order for

4    supplemental briefing on AGODCO's financial condition, which the court requested for the

5    purpose of fashioning an appropriate coercive sanction.  In fact, in AGODCO's May 31, 2017

6    motion for reconsideration, AGODCO asked for an extension to post the increased undertaking,

7    claiming that it needed a modest amount of additional time due to the observance of Ramadan in

8    its home country of Bahrain.  AGODCO thereby led the court to believe that it was in the process

9    of obtaining the bond, and would soon be in compliance with the March 30 order.  [Docket No. 81

10   at 2].  It now appears that AGODCO either misled the court on May 31, 2017, or it is misleading

11   the court now.

12        AGODCO's recent assertions regarding its inability to pay are highly suspicious in light of

13   the full record in this case.  To begin with, it contends that "AGODCO" is simply a trade name

14   used by Arabian Worldwide, an entity which is purportedly in dire financial straits.  This factual

15   contention is questionable.  AGODCO cites to the July 24, 2016 sworn declaration of Mr.

16   Eleftherios Antoniadis, who is also known as Terry Andis.  AGODCO submitted the declaration

17   in opposition to Defendants' original motion to dismiss.  [Docket No. 38-2].  In the declaration,

18   Andis attests that he is the Group Chief Operating Officer of AGODCO and has been the Chief

19   Operating Officer of Arabian Worldwide Ventures SPC since its founding in 2012.  Andis Decl.,

20   ¶¶ 3, 8.  Andis further attests that AGODCO is not a corporation, but rather is a brand and trade

21   name used by Arabian Worldwide Ventures SPC:

22            "Since April 2012, the AGODCO trading name and brand was
             wholly-owned by Arabian Worldwide Ventures SPC, which was
23           doing business as AGODCO, "Arabian Gas and Oil Development
             Company, and as Arabian Worldwide Ventures, SPC.  In Bahrain,
24           the trade name AGODCO has been used exclusively by Arabian
             Worldwide Ventures, SPC which carried on business as AGODCO
25           in that jurisdiction."

26   Andis Decl., ¶ 6.

27        However, Andis's assertions in his July 24, 2016 sworn declaration squarely contradict the

28   statements in the complaint that Andis verified under penalty of perjury in early July 2016, just a

8

United States District Court
Northern District of California

few weeks prior to his declaration.  *See* Verification [Docket No. 1-1].  According to the verified

complaint, AGODCO is "a corporation organized and existing under and by virtue of the laws of

the Kingdom of Bahrain, with a principal place of business located in Bahrain."  Compl., ¶ 3

[Docket No. 1].

AGODCO's recently submitted financial documents for Arabian Worldwide are also

suspicious.  None are authenticated.  All three are vague, and do not explain the connection, if any,

between AGODCO and Arabian Worldwide.  The first document purports to be an audited

financial statement for 2016 for Arabian Worldwide Ventures.  *See* 2016 Financial Statement (Ex.

1) [Docket No. 93-1].  This statement does not mention AGODCO at all.  If AGODCO is actually

a trade name used by Arabian Worldwide, one would expect the financial statement to reference

AGODCO at page 10, which lists related entities, or on page 18, which discusses pending court

cases.

Similarly, the second document purports to be a balance sheet for Arabian Worldwide

Ventures for the first half of 2017.  *See* Balance Sheet for January 1 through June 30, 2017 (Ex. 2)

[Docket No. 93-2].  The balance sheet lists AGODCO as a current liability in the amount of BD

(Bahraini Dinar) 96,250.000 or approximately US $255,285.14 (1BD = US $2.65).  However,

there is no explanation for this entry.  The third document purports to be a trial balance sheet for

Arabian Worldwide that shows a $0 balance in its bank accounts as of June 30, 2017.  *See* Trial

Balance Sheet for January 1 through June 30, 2017 (Ex. 3) [Docket No. 93-3].  This document

also lists AGODCO as a credit of BD 96,250.000 or approximately US $255,285.14.  As with the

Balance Sheet, this entry is unexplained.

The unauthenticated documents submitted by AGODCO stand in stark contrast to the

existing record, which demonstrates that AGODCO has substantial financial resources.  For

example, in December 2013, AGODCO paid a $5.2 million down payment for an allegedly

defective ship pursuant to the Memorandum of Agreement that is the subject of the London

arbitration which underlies this attachment proceeding.  *See* Memorandum of Agreement

("MOA"), ¶ 2 [Docket No. 1-4]; Defence and Counterclaim, ¶ 4 [Docket No. 1-7].  Additionally,

in his sworn declaration, Andis declared in July 2016 that AGODCO "remained willing, ready,

United States District Court
Northern District of California

9

1   and able to perform its obligations under the respective MOA's[,]" which would mean paying an

2   additional $20 million.  Andis Decl., ¶ 13; *see* MOA, ¶¶ 1-2.

3          At the hearing, Plaintiff's counsel attempted to infuse the record with additional "facts"

4   regarding AGODCO's allegedly precarious financial condition.  Counsel asserted that AGODCO

5   was having difficulty in obtaining a bond for the additional undertaking, that some of AGODCO's

6   assets were tied up in the London arbitration proceedings, and that counsel had considered

7   withdrawing because AGODCO was no longer paying his bills.  These are unsupported assertions.

8   The court must consider evidence, not counsel's representations.  AGODCO had ample

9   opportunity to establish a factual record to support its "inability to pay" defense.

10          In sum, the court finds that AGODCO has failed to meet its burden to establish

11   categorically and in detail why it is presently unable to comply with the March 30 order.

12   The court therefore finds AGODCO in civil contempt of the March 30 order.

13          **C.     Civil Contempt Sanctions**

14          If a party is found to be in civil contempt, a court may impose two types of sanctions: 1)

15   coercive sanctions, which are designed "to coerce obedience to a court order," and 2)

16   compensatory sanctions, which are designed to "compensate the party pursuing the contempt

17   action for injuries resulting from the contemptuous behavior.  *Gen. Signal Corp. v. Donallco, Inc.*,

18   787 F.2d 1376, 1380 (9th Cir. 1986); *see also Shell Offshore Inc.*, 815 F.3d at 1171.  "[A]lthough

19   the district court generally must impose the minimum sanction necessary to secure compliance,

20   *see Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992), the district court retains

21   discretion to establish appropriate sanctions."  *United States v. Bright*, 596 F.3d 683, 696 (9th Cir.

22   2010).

23                **1.     Coercive Per Diem Fine**

24          Coercive civil sanctions "generally take the form of conditional fines."  *Shell Offshore,*

25   *Inc.*, 815 F.3d at 629.  The civil contemnor "'carries the keys of his prison in his own pocket,'" by

26   being able "to purge the contempt and obtain his release by committing an affirmative act."

27   *Bagwell*, 512 U.S. at 828 (quoting *Gompers*, 211 U.S. at 442); *Shell Offshore Inc.*, 815 F.3d at 629

28   ("[T]he ability to purge is perhaps the most definitive characteristic of coercive civil contempt.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In determining the amount and duration of a coercive fine, courts "must . . . consider the

2    character and magnitude of the harm threatened by continued contumacy, and the probable

3    effectiveness of any suggested sanction in bringing about the result desired." *United Mine*

4    *Workers of Am.*, 330 U.S. at 304; *see also Whittaker Corp.*, 953 F.2d at 516. "[I]n fixing the

5    amount of a fine to be imposed as a . . . means of securing future compliance, [a court shall]

6    consider the amount of defendant's financial resources and the consequent seriousness of the

7    burden to that particular defendant." *United Mine Workers*, 330 U.S. at 304; *see also United*

8    *States v. Anderson*, No. 14-cv-01932-JST, 2016 WL 1169309, at *4 (N.D. Cal. Mar. 25, 2016) (in

9    order to determine the amount of the appropriate sanction, the court ordered the parties to provide

10   information about the defendant's financial resources).

11       Here, the court finds that a coercive daily fine should be imposed on AGODCO for each

12   day it remains out of compliance with the March 30 order, starting from the day following the date

13   of this order.  AGODCO was ordered to the post the additional undertaking by April 13, 2017.

14   *See* March 30 order.  Nearly half a year later, AGODCO still has not posted the additional

15   undertaking despite multiple opportunities to do so.  It appears that the only way to gain

16   AGODCO's compliance with the March 30 order is through use of a coercive fine.

17       The court finds that a fine of $500.00 a day payable to the court is appropriate under the

18   circumstances.  As discussed above, the record shows that AGODCO recently has had access to

19   substantial resources.  AGODCO paid a $5.2 million down payment on a ship in December 2013,

20   and as of July 2016, it remained willing, ready, and able to perform the remainder of the MOA,

21   which meant paying an additional $20 million.  At the hearing, AGODCO's counsel confirmed

22   that the London arbitration proceedings are ongoing, which strongly suggests that AGODCO has

23   access to the significant assets necessary to fund its legal position in that matter.

24       A daily fine of $500.00 is well within the range of coercive per diem fines issued by courts

25   in this district for civil contempt.  *See, e.g.*, *United States v. Wen-Bing Soong*, No. C-13-4088

26   EMC, 2015 WL 5168786, at *4 (N.D. Cal. Sept. 3, 2015) (imposing a coercive daily fine of

27   $500.00 per spouse, or $1,000 a day collectively as a couple, was appropriate because the couple

28   appeared to have significant financial resources, a lesser fine was unlikely to secure compliance

11

1    due to the lengthy period of non-compliance, and further delay would prejudice the other party's

2    investigation);  *In re Chase Bank USA, N.A. Check Loan Contract Litig*., No. 3:09-MD-2032

3    MMC, 2013 WL 772714, at *6 (N.D. Cal. Feb. 28, 2013), aff'd in part, appeal dismissed in part,

4    607 F. App'x 737 (9th Cir. 2015) (imposing a coercive daily fine of $300.00 against a class

5    member for violating a court order enjoining class members from prosecuting released claims

6    against the released parties in a class action settlement); *United States v. Gillies*, No. CV-11-3623

7    CW MEJ, 2013 WL 968244, at *2 (N.D. Cal. Feb. 22, 2013), report and recommendation adopted,

8    No. C 11-03623 CW, 2013 WL 968231 (N.D. Cal. Mar. 12, 2013) (imposing a coercive daily fine

9    of $250.00 against an individual for failure to comply with court order for more than 300 days).

10          In its supplemental brief, AGODCO argues that the appropriate sanction, if any, would be

11   to dismiss the case with prejudice.  *See* Opp'n to Defs' Request for Civil Contempt Sanctions at 8-

12   9.  The court rejects this bald attempt to escape a contempt sanction, and ultimately to avoid

13   compliance with the March 30 order.

### 2.    Compensatory Sanction

15          Wisdom seeks sanctions of $31,017.26 as reimbursement for attorneys' fees and costs

16   incurred as a result of AGODCO's failure to comply with the March 30 order.  [Docket Nos. 73,

17   94]; *see also* Ex. A through Ex. F, Voss Decl. [Docket Nos. 94-2 through 94-7].

18           "In fashioning civil contempt sanctions, the court has the discretion to award reasonable

19   fees and costs as a remedial measure, regardless of whether the party that is in contempt acted

20   wilfully."  *In re TFT-LCD (Flat Panel) Antitrust Litig*., 289 F.R.D. 548, 553 (N.D. Cal. 2013),

21   dismissed (May 23, 2014) (citing *Perry v. O'Donnell*, 759 F.2d 702, 704–705 (9th Cir. 1985).

22   Courts "calculate an award of attorneys' fees by first calculating the 'lodestar.'" *Caudle v. Bristow*

23   *Optical Co*., 224 F.3d 1014, 1028 (9th Cir. 2000) (citing *Morales v. City of San Rafael*, 96 F.3d

24   359, 363 (9th Cir. 1996)).  "The 'lodestar' is calculated by multiplying the number of hours the

25   prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales*, 96

26   F.3d at 363.  The lodestar can then be adjusted upon consideration of the twelve factors outlined in

27   *Kerr v. Screen Guild Extras, Inc*., 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951

28   (1976) to determine the reasonableness of the award:

United States District Court
Northern District of California

1

2
> (1) the time and labor required, (2) the novelty and difficulty of the
> questions involved, (3) the skill requisite to perform the legal service
> properly, (4) the preclusion of other employment by the attorney due
> to acceptance of the case, (5) the customary fee, (6) whether the fee
> is fixed or contingent, (7) time limitations imposed by the client or
> the circumstances, (8) the amount involved and the results obtained,
> (9) the experience, reputation, and ability of the attorneys, (10) the
> "undesirability" of the case, (11) the nature and length of the
> professional relationship with the client, and (12) awards in similar
> cases.

3

4

5

6

7   *Id*. at 364 n.8 (citing *Kerr*, 526 F.2d at 70 (9th Cir. 1975).

8         Wisdom bears the burden of producing satisfactory evidence "that the requested rates are

9   in line with those prevailing in the community for similar services by lawyers of reasonably

10  comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984).

11  "Affidavits of the . . . attorney and other attorneys regarding prevailing fees in the community, and

12  rate determinations in other cases, particularly those setting a rate for the . . .  attorney, are

13  satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge*

14  *Corp*., 896 F.2d 403, 407 (9th Cir. 1990*)*; *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210

15  (9th Cir. 1986), opinion amended on denial of reh'g, 808 F.2d 1373 (9th Cir. 1987) ("In

16  determining reasonable hours, counsel bears the burden of submitting detailed time records

17  justifying the hours claimed to have been expended."). Courts also may rely on decisions by other

18  courts awarding similar rates for work in the same geographical area by attorneys with comparable

19  levels of experience. *See Rodriguez v. Barrita, Inc*., 53 F. Supp. 3d 1268, 1277-78 (N.D. Cal.

20  2014) (citing *Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009)). As a general rule, the

21  forum district represents the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392,

22  1405 (9th Cir. 1992). The court "should . . . exclude from the lodestar fee calculation any hours

23  that were not 'reasonably expended,' such as hours that are excessive, redundant, or otherwise

24  unnecessary." *Rodriguez*, 53 F. Supp. 3d at 1281 (quoting *Hensley*, 461 U.S. at 433-34).

25        Wisdom requests the following hourly rates for its attorneys: $363.00 for shareholder

26  Elizabeth P. Beazley; $364.74 for shareholder James A. Marissen; $316.27 for shareholder Tara B.

27  Voss; $268.03 for associate Christopher Farnsworth; and $200.45 for associate Rachel Weitzman.

28  Voss Decl. ¶¶ 7-9.

United States District Court
Northern District of California

1       The Voss declaration sets forth the relevant facts supporting the requested hourly rates for

2   each of these timekeepers.  Having reviewed the record, the court finds that the requested hourly

3   rates are within the range of reasonable hourly rates for attorneys of comparable skill and

4   experience litigating similar cases in the San Francisco Bay Area.  *See, e.g.*, *Ingram v. Oroudjian*,

5   647 F.3d 925, 928 (9th Cir. 2011) (explaining that "judges are justified in relying on their own

6   knowledge of customary rates and their experience concerning reasonable and proper fees").[1]

7       Wisdom requests fees for a total of 101 hours for the work performed by its attorneys.

8   Having reviewed Wisdom's submissions including the billing records, the court finds that the

9   following hours were reasonably incurred in connection with AGODCO's failure to comply with

10  the March 30 order:

11      • 4.25 hours for reporting and advice to client regarding Plaintiff's failure to post

12          increased security as ordered by the court, totaling $1,502.49

13      • 1.5 hours for exchanges with counsel for Plaintiff regarding its failure to post

14          increased security as ordered by the court, totaling $710.00

15      • 6.5 hours for opposing Plaintiff's motion for leave to file a motion for

16          reconsideration; totaling $2,042.30

17      • 12 hours for preparing Defendants' reply brief in support of Defendants' request

18          for civil contempt sanction, totaling $3,770.40

19      • 13.25 hours preparing the supplemental brief and supporting documentation for its

20          request for attorneys' fees and costs, totaling $4,190.57

21      Wisdom argues that it is entitled to all of the fees incurred in opposing AGODCO's motion

22  to stay, because it would not have had to oppose a stay motion had AGODCO complied with the

23  March 30 order.  This argument is unpersuasive.  AGODCO could have filed a stay motion in the

24  normal course of litigation; therefore, Wisdom's work in opposing the stay is not sufficiently tied

25  

26  [1]  Defense counsel compares its hourly rates with those published by RBZ, LLP, a law services
    group in Los Angeles, California which publishes an annual survey of billing rates charged by
27  Southern California law firms.  *See* Defs' Supp. Brief at 4 [Docket No. 94].  Since the forum
    district represents the relevant legal community for purposes of determining the reasonableness of
28  the requested hourly rates, *see Gates*, 987 F.2d at 1405, the hourly rates charged by Southern
    California law firms are not particularly relevant here.

14

1    to obtaining AGODCO's compliance with the March 30 order.  However, Wisdom devoted

2    approximately half of its opposition brief to its request for civil contempt sanctions.  The court

3    finds it reasonable and appropriate to award half of the requested fees for this work, or $7,265.97.

4         The court declines to award Wisdom any fees expended in opposing AGODCO's petition

5    for writ of mandamus, as Wisdom has failed to show that these fees were reasonably incurred as a

6    result of AGODCO's failure to comply with the March 30 order.

7         In sum, the court awards Wisdom $19,481.73 in attorneys' fees for the hours reasonably

8    expended as a result of AGODCO's failure to comply with the March 30 order.

9         Wisdom requests $1,102.21 in costs for LEXIS research, parking and mileage for the May

10   25, 2017 hearing on Plaintiff's motion to stay; airfare and hotel for the May 25, 2017 hearing on

11   Plaintiff's motion to stay; ground transportation for the May 25, 2017 hearing on Plaintiff's

12   motion to stay; and fees paid to an attorney service.  *See* Ex. C through Ex. F to Voss Decl.

13        Having reviewed these invoices, the court finds that it is appropriate to award half of the

14   requested costs for LEXIS research incurred for Wisdom's opposition brief to AGODCO's motion

15   to stay, or $31.73, because Wisdom devoted approximately half of its opposition brief to its

16   request for civil contempt sanctions.  *See* Ex. C to Voss Decl. (May 31, 2017 invoice listing

17   $63.45 in LEXIS research).  It is similarly appropriate to award half of the requested costs for

18   parking, mileage, airfare, hotel, travel, fees paid to an attorney service, copying costs, and LEXIS

19   research incurred for the May 25, 2017 hearing on Plaintiff's motion to stay, or $460.40.  *See* Ex.

20   D to Voss Decl. (June 19, 2017 invoice listing $920.80 in costs).  It appears that Wisdom's

21   counsel incurred LEXIS research charges on June 20-21, 2017 solely in connection with drafting

22   and researching Wisdom's reply brief in support of its request for civil contempt sanctions.

23   Accordingly, the court awards the entire requested cost for LEXIS research and fees to the

24   attorney service, or $117.96.  *See* Ex. E to Voss Decl. (July 21, 2017 invoice).  In sum, the court

25   awards Wisdom $610.09 for the costs reasonably incurred as a result of AGODCO's failure to

26   comply with the March 30 order.

27        In total, the court awards Wisdom a monetary sanction in the amount of $20,091.82 for the

28   attorneys' fees and costs reasonably expended as a result of Plaintiff's failure to comply with the

United States District Court
Northern District of California

15

<div style="float:left; writing-mode:vertical">United States District Court
Northern District of California</div>

1   March 30 order.

2   At the hearing, AGODCO's counsel argued that Wisdom was not entitled to an award of

3   attorneys' fees and costs because its insurer was responsible for those payments, rather than

4   Wisdom.  This argument is not well-taken.  To begin with, AGODCO raised it for the first time at

5   oral argument, thereby depriving Wisdom of a proper opportunity to respond.  Moreover,

6   Plaintiff' counsel is speculating about who actually paid the invoices in question.  Finally,

7   AGODCO has not identified any authority which would preclude an award of attorneys' fees to a

8   party because its insurance carrier paid the attorneys' invoices, instead of the party itself.

## III.    CONCLUSION

10   In conclusion, the court finds AGODCO in civil contempt of the March 30 order.

11   AGODCO is ordered to pay a daily fine of $500.00 for each day it remains out of compliance with

12   the March 30 order, beginning with the day following the date of this order.  The court awards

13   monetary sanctions to be paid by AGODCO to Wisdom in the amount of $20,091.82 for

14   reimbursement of attorneys' fees and costs reasonably incurred as a result of AGODCO's failure

15   to comply with the March 30 order.  AGODCO shall make full payment to Wisdom within 30

16   days of the date of this order.

18   **IT IS SO ORDERED.**

19   Dated: October 3, 2017



Donna M. Ryu
United States Magistrate Judge